Charles S. DOVEY, Sr., Appellant,

v.

UNITED STATES of America.

Emma R. DOVEY, Executrix of the Estate of Francis S. Dovey, Deceased, Appellant,

v.

UNITED STATES of America.

Nos. 12359, 12360.

United States Court of Appeals Third Circuit.

Argued Feb. 4, 1958.

Decided April 21, 1958.

Thomas J. Gaffney, Philadelphia, Pa., for appellants.

Grant W. Wiprud, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Fred E. Youngman, Attorneys, Department of Justice, Washington, D. C., Harold K. Wood, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

These are actions for tax refunds, brought by beneficiaries under a simple or currently distributable trust to recover amounts paid by them under protest as income taxes on certain distributions made to them by the trustees. The trust was set up by the will of Cecelia S. Brill, who died in 1937. The corpus of the trust included 1690 shares of 7% cumulative preferred stock in the Brill Corporation, worth at the time of the settlor's death about $64,000. In 1944, the Brill Corporation merged with the American Car and Foundry Motors Company, and shortly thereafter the Brill stockholders, including the trustees here, exchanged their stock for an aggregate of cash with common stock and debentures of the newly merged corporation.

The federal taxing authorities administratively determined that the cash was a capital gain and that the remainder of the merger transaction was tax free, and accordingly the stockholders in the Brill Corporation, including the trustees under the Cecelia Brill will, were not taxed on their receipt of the common stock or debentures of the merged corporation. The trustees sold the common stock of the merged corporation in 1946, at a time when the trust corpus was about five or six times more valuable than at its inception. The trustees paid a capital gains tax on the amount of the proceeds of this sale allocable to the Brill preferred stock.

At this point two of the beneficiaries of the trust demanded a distribution of some of the assets of the trust to them since there had been substantial dividend accumulations on the original Brill stock which had never been paid. An adjudication of the Orphans' Court of Philadelphia, sanctioning a settlement of this controversy, ordered the distribution of the debentures to the beneficiaries. The government contends that this distribution to the beneficiaries constitutes taxable income in their hands. In opposition, the beneficiaries contend that the property distributed to them has the same character in their hands as it had in the hands of the trustees. On the undisputed facts the district court sustained the government's position and denied the refund claims. The beneficiaries have appealed.

The matter in dispute, as stated by the court below, is "whether the tax free nature of the exchange of the securities shielded the beneficiaries from tax when some of the new securities were distributed to them in kind as 'income' under the apportionment theory of the Pennsylvania Law of Trusts." The answer requires examination and interpretation of the scheme and the language Congress has employed for the taxation of the income of trusts, which appears in Sections 161 and 162 of the Internal Revenue Code of 1939, 26 U.S.C.1952 ed. §§ 161, 162. Of immediate concern is the provision of § 162(b) that "the amount of the income of the estate or trust for its taxable year which is to be distributed currently * * * shall be included in computing the net income of the * * * beneficiaries * * * ", and at the same time shall be an allowable "deduction in computing the net income of the estate or trust * * *." It will be observed that Section 162(b) addresses itself only to the tax treatment of "income of * * * [a] trust for its taxable year which is * * * distributed currently [to the] * * * beneficiaries * * *." For the beneficiary to be taxable the trust must have realized income and, in addition, that gain must have been translated into some distribution to the beneficiary. Questions of apportionment and rights of distribution of trust property, whether it be income or corpus, will be determined by the law of the state which governs the administration of the trust. But before any question of distribution is reached it is necessary to decide in a case like this whether the trust realized income in the exchange of the Brill stock for stock and debentures of the merged corporation. For if there was no "income of the * * * trust" realized in this exchange, the very basis and subject matter upon which the taxing scheme of Section 162(b) operates are lacking.

Once the problem is analyzed this way, it is apparent that, although the state law controls apportionment and distribution of assets, it has nothing to do with the initial tax question whether, prior to that distribution the trust realized income so as to bring Section 162(b) into operation.

It is clear here that, if the question is to be viewed as a matter of federal law, the acquisition of stock and debentures of the merged corporation was a tax free exchange of capital items without realization of income. For income tax purposes no subsequent ruling on the allocation or distribution of these assets under state law would change their character as accessions to corpus, already established under federal tax law. To the extent that the decisions of the Court of Appeals for the Second Circuit in McCullough v. Commissioner, 1946, 153 F.2d 345 and Johnston v. Helvering, 1944, 141 F.2d 208, certiorari denied, Johnston v. C. I. R., 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575, reason to the contrary we disagree with them, as the taxing authorities have done in Rev.Rul. 24, 1953–1 Cum.Bull. 263.

Actually, both parties here seem to agree that the trust realized no income in the transactions which caused the Orphans' Court to order a distribution to the beneficiaries. But from this they draw opposite conclusions. The beneficiaries contend that all income of such a trust as we have here is taxed under Section 162 and related provisions of the trusts subchapter of the Internal Revenue Code, and not otherwise. But the government would use the general provisions of Section 22(a) to reach whatever benefit any distribution of the trusted property may yield the beneficiary, even though the trust itself has received no income taxable under Section 162.

We think the beneficiaries are right. The special statutory scheme of the trusts subchapter was intended to deal comprehensively with its subject. It predicates a conception of a trust as a recipient of income and it deals with the special problem of fair allocation of income taxes on gain from trusted property between the fiduciary and the beneficiary. See Holland, Kennedy, Surrey and Warren, A Proposed Revision of the Federal Income Tax Treatment of Trusts and Estates, 1953, 53 Colum.L.Rev. 316, 317–319. It seems unlikely that Congress intended separate and independent resort to the general income defining provisions of Section 22 to tax benefits of a settlor's bounty not covered by Section 162.

This analysis is supported by subsection (d) of Section 162. That subsection in particular seems to reflect legislative purpose to deal comprehensively with the entire matter of taxation of gain derived from trusts and estates. It supplements subsection 162(b) by providing, among other things, that "where the amount paid * * * [to the beneficiary] can be paid * * * out of other than income, the amount paid * * * during the taxable year * * * shall be considered as income of the estate or trust * * * if the aggregate of such amounts so paid * * * does not exceed the distributable income of the estate or trust for its taxable year." Such language suggests that Congress had in mind the problem of the taxable status of distributions from corpus which did not reflect any income realized by the trust. And with this problem in mind Congress saw fit to make the amount of income received by the trust a limiting factor upon the taxability of distributions to the beneficaries.

A rather similar thought appears earlier in the history of the Supreme Court's dealing with the effect of Section 22 upon the taxable status of the proceeds of trusts. In Irwin v. Gavit, 1925, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897, which recognized that the general exemption of gifts from taxable income did not prevent the taxation of certain trust income, the Court sharply distinguished distributions of income from distributions of corpus, saying: "[W]e think that the provision of the act [now Sec-

tion 22(b) (3)] that exempts bequests assumes the gift of a corpus and contrasts it with the income arising from it, but was not intended to exempt income properly so-called * * *." At page 167 of 268 U.S., at page 476 of 45 S.Ct. In that case, gain taxable to trust beneficiaries seems to have been thought of exclusively as a derivative of the realization of income by the trust.

We think the tax free character of the exchange by which the trust acquired an economic advantage by way of enlargement of corpus persisted when that advantage was passed on through a distribution to the beneficiaries. In reaching this conclusion we have not overlooked any of the government's arguments which the district court found it unnecessary to consider. However, we think none of the government's contentions can prevail if one accepts the analysis we already have made of the determinative transactions.

The judgment will be reversed.